# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PEGGY S. AMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Case No. 08-508-PMF |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**FRAZIER, Magistrate Judge:**

This case is before the Court for review of a decision denying Peggy S. Ames' applications for disability and supplemental security income. The administrative record is on file, along with supporting and opposing briefs.

Ames applied for benefits in January, 2005. An Administrative Law Judge (ALJ) collected evidence, held a hearing, and decided that Ames was not disabled. That decision became final when the Appeals Council declined to review the ALJ's decision. Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3).

To receive disability benefits or supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner as being so severe as to preclude substantial gainful activity, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is not capable of performing any other work existing in significant numbers in the national economy. *Briscoe ex rel. Briscoe v. Barnhart*, 425 F.3d 345, 351-51 (7th Cir. 2005). An affirmative answer at step three or five results in a finding of disability. The burden of proof rests with the claimant through step four, after which the burden shifts to the Commissioner. *Id*.

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). The substantial evidence standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Because the Commissioner of Social Security is responsible for weighing evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). However, the Court does not defer to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

## I. Assessment of Treating Physician Opinions

Plaintiff argues that the ALJ misapplied the "treating physician rule." Specifically, she claims that the ALJ gave too little weight to medical opinions offered by Dr. Manchikanti, Dr. Howell, Dr. Jennings, Dr. Mitry, and Dr. Brummer. In her view, their medical opinions were well-supported. Defendant responds that the ALJ gave appropriate weight to extreme medical opinions that were neither well-supported nor consistent with the record as a whole.

A treating physician's opinion regarding the nature and severity of a patient's impairment is entitled to controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record. *Moss v. Astrue*, 555 F/3d 556, 560 (7th Cir. 2009). "[M]edical opinions upon which an ALJ should rely need to be based upon objective observations and not amount merely to a recitation of a claimant's subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 370-71 (7th Cir. 2004).

Dr. Manchikanti. Dr. Laxmaiah Manchikanti is a pain management specialist. Plaintiff's problems began following a work injury diagnosed as a sacral contusion. She was authorized to return to work without restrictions on March 12, 2003 (R. 475). Subsequently, plaintiff often sought treatment for back and leg pain and related symptoms. In November, 2005, Dr. Manchikanti performed a comprehensive evaluation of plaintiff's pain complaints and formed the impression that she suffered from lumbar degeneration of intervertebral disc, varicose veins, a generalized anxiety disorder, and recurrent major depression. He assessed plaintiff's prognosis as fair to poor and formulated a 7 to 12-month initial treatment program consisting of drug therapy and caudal epidural injections, followed as necessary with additional injections and surgical treatment of adhesions. Medications indicated for relief of pain and muscle spasm were prescribed.

Plaintiff underwent an injection procedure on December 16, 2005. On January 27, 2006, Dr.

Manchikanti noted that plaintiff achieved more than 50% relief of pain for two weeks, without experiencing side effects. He revised his treatment plan – opting for conservative therapy – and prescribed medication indicated for relief of pain and muscle spasm.

On February 10, 2006, Dr. Manchikanti noted that plaintiff had achieved more than 50% relief of pain for more than five weeks. He said she was "extremely pleased and says that it has helped her tremendously" but that she was "hurting some again." Dr. Manchikanti administered a second injection and discharged plaintiff with a prescription for antidepressant medicine (R. 439-457).

In March, 2007, Dr. Manchikanti assessed plaintiff's functional capacity, estimating that she could occasionally lift items weighing up to 20 pounds and occasionally carry items weighing up to ten pounds. In an eight-hour workday, she could sit for 30 minutes at a stretch for a total of three hours, stand for 20 minutes for a total of two hours, and walk for 20 minutes for a total of two hours, with an hour of rest time. She could occasionally use her hands to reach overhead, push, and pull, and frequently use her hands to reach, handle, finger, and feel. She could occasionally use her feet to operate foot controls. She could occasionally perform stooping, balancing, and stair-climbing activities but could not climb ladders or scaffolds, kneel, crouch, or crawl. She could occasionally operate a motor vehicle and tolerate humidity and wetness but could not tolerate exposure to unprotected heights, moving mechanical parts, dust, odors, pulmonary irritant, extreme cold, extreme heat, or vibrations. She could shop, travel without a companion, walk without assistance, walk on rough or uneven surfaces, use public transportation, climb a few steps with a hand rail, prepare a simple meal and feed herself, care for personal hygiene, and sort/handle/use paper files. As support for his opinions, Dr. Manchikanti referenced lumbar intervertebral disc disease, major

depression, and generalized anxiety disorder (R. 463-468).

The ALJ credited Dr. Manchikanti's lifting restriction but offered these reasons for limiting the weight accorded to his other restrictions:

> [T]he weight of the evidence does not support such restrictive limitations on the claimant's ability to walk, stand, sit, tolerate environmental hazards, or perform postural and manipulative activities. The evidence indicates that the clamant has minimal degeneration of her lumbar spine, she has minimal weakness in her extremities, and she had good range of motion of her extremities.

(R. 21).

Plaintiff argues that Dr. Manchikanti's opinions are supported by medical records showing that she often sought and received treatment for complaints of pain. While the observation is accurate, it reflects a degree of confusion. As noted above, the ALJ's analysis of medical opinion evidence is two-fold. The ALJ's assessment in this case was based on a finding that the medical opinion was not well-supported by objective findings and observations.

The administrative record supports the ALJ's assessment of Dr. Manchikanti's opinions regarding plaintiff's limited ability to walk, stand, sit, tolerate environmental hazards, and perform postural and manipulative activities. Dr. Manchikanti's clinical examination produced very few objective findings suggesting that plaintiff's ability to perform these activities was restricted to the degree described (R. 452-455). Moreover, while Dr. Manchikanti reviewed numerous laboratory and diagnostic test results, the findings reported there did not lend considerable support to the aspects of his opinion that were discounted (R. 455-256). Also, a subsequent neurosurgery consultation produced little objective evidence of functional restriction (R. 458-459). The lack of objective support adequately explains the ALJ's decision to reduce the weight accorded to most of Dr. Manchikanti's opinions.

Dr. Howell. In August, 2006, Dr. Howell performed a clinical exam and detected a positive

neurological sign and a positive sign for a type of scoliosis. She assessed chronic back pain with radiculopathy affecting the left leg (R. 435, 498).

On April 18, 2007, Dr. Howell performed a physical exam and noticed that plaintiff was walking with a cane. She assessed chronic back pain and tobacco abuse (R. 486).

On April 24, 2007, Dr. Howell interviewed plaintiff and reviewed her records. She completed a functional capacity assessment form, reporting that plaintiff could lift and carry less than ten pounds, stand and walk less than two hours (standing five minutes before changing positions and walking for five minutes after standing for 60 minutes), sit less than two hours, and needed to lie down at unpredictable intervals three to four times daily. She could never twist, stoop, climb stairs, balance, kneel, or crawl but could occasionally crouch. Her ability to handle, push, and pull items was affected and she needed to avoid moderate exposure to extreme cold, humidity, and hazards, as well as concentrated exposure to wetness. She further indicated that plaintiff walked with a cane and estimated that she would miss work more than four days in a month. As support for her opinion, Dr. Howell generally referenced her personal observations, x-ray results, and reports generated by other health care providers (R. 481-485).

The ALJ explained that little weight was given to Dr. Howell's assessment because:

> [The opinion] appears to be based on personal observation, the claimant's subjective reports, and reports from other providers. Other medical providers have indicated that the claimant's radiographic studies, nerve conduction tests, and findings on examination indicate that the claimants subjective complaints are not supported by the objective evidence. Additionally, the claimant has exhibited pain medication seeking behavior and the claimant has a significant history of ETOH. Moreover, the claimant's testimony was not credible concerning her ETOH abuse as noted above.

(R. 21).

Plaintiff argues that Dr. Howell's opinion deserved more weight because it was consistent with her medical treatment history. Defendant feels that the ALJ properly discounted Dr. Howell's

opinion because it was not reliable or persuasive and was partially based on personal observation rather than objective indicators.

Medical records compiled before and after Dr. Howell formed her opinion support the ALJ's assessment. The record contains few objective signs that plaintiff's physical ailments produced the functional limitations described by Dr. Howell. For example, in November, 2003, Dr. Welch evaluated plaintiff's condition following a complaint of severe low back pain radiating to her leg. After he detected objective signs of tenderness and some lack of coordination in walking, he diagnosed chronic back pain and alcohol intoxication (R. 254-255). Dr. Leventhal performed a complete evaluation between December, 2003, and February, 2004. He detected some tenderness and restricted motion during clinical exams. X-rays were interpreted as showing normal bony architecture and the disk spaces were well-maintained. He interpreted a bone scan as "entirely normal" and MRI results as "fairly normal" showing mild degenerative disks without evidence of nerve impingement. The objective findings did not explain plaintiff's pain, which she often rated as 9 or 10 on a 10-point scale (R. 189, 193-195). Further testing in May, 2005, produced more normal x-rays and another normal bone scan as well as a normal neurological exam (R. 306-08). Additional testing in September, 2005, showed mild abnormalities (R. 397). At about the same time, Dr. Jennings accused plaintiff of giving her medication to others and refused to order a refill on her prescriptions (R. 401).

In April and May, 2005, Drs. Delano and Gotway reviewed plaintiff's medical records and determined that her chronic back pain and muscle spasms would restrict her ability to function but that she retained the capability to work at a light level of exertion, with some postural and environmental limitations (R. 176-184).

In September and October, 2005, plaintiff was evaluated by Dr. Welch, who detected mild tenderness, negative straight leg-raising, a normal gait, no weakness, and no sensory loss. Dr. Welch diagnosed chronic pain, pain drug seeking behavior, alcohol intoxication, noncompliant use of prescription medication, and prescription medication soliciting (R. 386-387, 402). In March, 2006, plaintiff sought emergency treatment of back pain, rating the severity of her symptoms as a constant "10." The examination showed objective signs of limited motion in her low back, focal tenderness, and positive straight leg raising tests but no weakness or sensory loss. Plaintiff was diagnosed with back pain and sciatica, treated with intramuscular injections, and discharged (R. 370-73). In May, 2006, Dr. Brummer formed the impression that plaintiff had misused her prescribed medication. He terminated their physician-patient relationship and instructed plaintiff to find another doctor (R. 337).

In January, 2007, a neurosurgeon performed a consultative evaluation. His examination showed that mechanical signs were negative for radiculopathy, range of motion of the lumbar spine was "excellent," reflexes were active and symmetrical, and neither weakness nor atrophy were detected during the motor examination. The only objective sign noted during the examination was decreased sensation to pinprick in the lower left leg.

In sum, the functional restrictions described by Dr. Howell could be discounted because they were not well-supported by objective medical evidence, such as x-ray results, bone scan results, MRI results, and findings observed ord detected during clinical examinations. Moreover, the ALJ could properly discount assessments based on Dr. Howell's "personal observation." That phrase, considered in light of the decision to formulate the opinion via interview, suggests that some of her opinions were based on subjective reports rather than medical signs and indicators.

Dr. Jennings. Plaintiff also challenges the ALJ's assessment of an opinion reported by Dr. Jennings in August, 2005. In a letter, Dr. Jennings offered the opinion that plaintiff suffered from peripheral neuropathic pain syndrome. He felt this condition caused considerable limitations in her ability to stand and walk (R. 284). The ALJ found that specific state agency opinions were more persuasive and based on objective medical evidence. Defendant points out that a few days after Dr. Jennings penned his letter, nerve conduction study results showed no evidence of radiculopathy or peripheral neuropathy (R. 471). This report lends adequate support the ALJ's assessment of Dr. Jennings' opinion.

Dr. Mitry and Dr. Brummer. Plaintiff argues that the ALJ failed to give appropriate weight to opinion evidence provided by Drs. Mitry and Brummer.

On January 5, 2006, Dr. Brummer performed a clinical examination and diagnosed depression, anxiety, restless leg syndrome, gastroesophageal reflex disease, chronic back pain, and insomnia. He adjusted plaintiff's medications (R. 344).

In May, 2006, Dr. Mitry evaluated plaintiff's pain complaints at Dr. Brummer's request. He reviewed some imaging studies and interpreted them as showing mild discogenic and degenerative changes. Dr. Mitry took plaintiff's history, noting pain interrupted sleep. He observed that plaintiff walked with small steps and had a fairly wide antalgic gait. During the exam, plaintiff was able to perform straight leg raising on one side to approximately 45 degrees and on the other side to 15 to 20 degrees. Dr. Mitry formed the impression that plaintiff suffered from chronic low back pain and might possibly have facet arthropathy and/or lumbar radiculopathy. He also formed the impression that plaintiff experienced myofascial pain (R. 422-23).

These reports identify plaintiff's ailments but do not provide information helpful to the ALJ in assessing ability (or inability) to perform basic work functions. The Court is not persuaded that

the ALJ failed to properly apply the treating physician rule to this evidence.

## II. Assessment of Impairment Severity

Plaintiff also challenges the ALJ's Step 2 assessment. At this Step, the ALJ considered whether plaintiff had a medically severe impairment or impairments. The ALJ determined that plaintiff's degenerative disc disease was severe and that her polysubstance abuse was non-severe (R. 15-16). Plaintiff believes she has other severe mental and physical impairments. Defendant argues that this aspect of the ALJ's decision is not legally relevant.

The medical records indicate that plaintiff has been diagnosed with and treated for a variety of ailments. At the hearing, plaintiff indicated that she could not work because of pain in her back and left leg. She said she had stopped drinking and could not identify any other problems (R. 529, 532). In these circumstances, the ALJ was justified in focusing on plaintiff's pain and substance abuse. Moreover, any error in identifying all severe impairments at Step 2 is harmless. Because the ALJ found in plaintiff's favor at Step 2, the distinction between severe and non-severe impairments did not contribute to the ultimate finding that plaintiff was not disabled. That is, once the disability analysis proceeds beyond Step 2, all medically determinable conditions are evaluated without regard to severity. 20 C.F.R. § 404.1545(a)(2).

## III. Assessment of Residual Functional Capacity

Plaintiff argues that the ALJ erred in assessing her residual functional capacity. She believes that the medical evidence, properly weighed, demonstrates that she cannot perform work activities at even the sedentary level. Defendant maintains that the ALJ's residual functional capacity assessment is supported by the record as a whole and Dr. Delano's medical opinion.

The ALJ decided that plaintiff could perform a range of light work, limited by a further restriction of occasional postural activities and simple one or two-step tasks secondary to pain complaints (R. 17). Residual functional capacity is an assessment of the most a person can do despite limitations caused by medically determinable physical and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a).

The Court has reviewed the entire administrative record. As noted in the previous discussion, the ALJ was entitled to discount the weight of opinion evidence that might have supported a finding that plaintiff was unable to work at even a sedentary level of exertion. Considering the numerous efforts to evaluate plaintiff's pain and not-infrequent indications that plaintiff obtained some level of relief with treatment, the ALJ could draw meaning from the relative absence of objective signs or findings of a disabling condition. The record considered as a whole lends substantial support for this aspect of the ALJ's analysis.

### IV.     Assessment of Ability to Perform Past Work

Plaintiff also argues that the ALJ erred in concluding that she could return to her past jobs as assembler, kitchen helper, and press tender/packer. Defendant maintains that this finding is supported by substantial evidence.

At this step in the analysis, the Commissioner may satisfy the burden of proof by presenting reliable vocational testimony. *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008).

At the hearing, a vocational expert testified that a hypothetical individual who was limited to unskilled, light exertion with occasional postural functions would be able to perform work as an assembler, fast food worker, and press tender/packer (R. 544). There is no challenge to the

reliability of the vocational expert's testimony. Accordingly, this aspect of the ALJ's decision has substantial support in the record.

## V.     Conclusion

The Commissioner's decision denying Peggy S. Ames' January, 2005, applications for disability and supplemental security income is AFFIRMED.

**SO ORDERED:  April 27, 2009  .**

*s/Philip M. Frazier*
**PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE**
